IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| TAMMY ALMAND, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | 5:07-CV-64-WDO |
| | : | |
| REYNOLDS & ROBIN, P.C., and | : | |
| SHERWIN P. ROBIN, ATTORNEY, | : | |
| | : | |
| Defendants | : | |

**ORDER**

Plaintiff Tammy Almand purchased a 1998 Ford Mustang on July 6, 2000. She signed a note and security agreement obligating her to pay the debt and providing the lender with a security interest in the vehicle as collateral for the loan. The loan was made by American Investment Bank. Plaintiff Almand defaulted on the loan in March of 2001. Pursuant to the provisions of the security agreement, the lender repossessed the vehicle on April 18, 2001. A Notice of Repossession, Right to Redeem and Intent to Pursue Deficiency were mailed via certified mail to Plaintiff on April 19, 2001. The vehicle was sold at a public auction on May 16, 2001 and a deficiency of approximately $11,000 was left after application of the proceeds of the debt to the loan.

After the repossession and sale, the debt was assigned to Calvary Portfolio Services. Calvary hired the defendants herein to represent them in connection with collecting the deficiency. Defendant Sherwin Robin, Calvary's attorney, prepared an affidavit stating he

1

thoroughly reviewed the file and determined the matter involved a valid debt on an automobile owed by Plaintiff Almand. Defendants thereafter filed suit in the Upson County Superior Court on January 17, 2007 seeking recovery of the deficiency amount. Almand filed an answer and counterclaim arguing that the statute of limitations on the debt had run and barred the deficiency suit.

Plaintiff Almand filed the instant action against the collections firm on February 23, 2007 asserting violations of the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff contends the Upson County suit filed by Defendants is a violation of the FDCPA because the statute of limitations on the debt has allegedly expired. The matter is now before the Court on the defendants' motion for summary judgment. Defendants contend that no violation of the FDCPA could have occurred because it is unclear under Georgia law which statute of limitations applies to this case, the 4-year statute of limitations for the sale of goods pursuant to Article 2 of the U.C.C. or the 6-year statute of limitations for secured transactions pursuant to Article 9. Defendants contend they had a good faith basis for filing the suit based on the authority that does exist that indicates the matter falls within Article 9.

Summary Judgment is appropriate when the pleadings, depositions and affidavits submitted by the parties show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Supreme Court has explained that the moving party's burden may be discharged "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving

2

party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In Celotex, the Court held that summary judgment is appropriate against

> A party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Id. at 322-23. "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact." Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). "Summary judgment . . . is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (citing Fed. R. Civ. P. 1; Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 467 (1984)).

The Fair Debt Collection Practices Act ("FDCPA") was passed based on findings by Congress that

> There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

3

> Existing laws and procedures for redressing these injuries are inadequate to protect consumers.
>
> Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.
>
> Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.
>
> It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692. Debt collectors may not use false, deceptive or misleading representations or means in connection with the collection of any debt. As it pertains to the claims in this case, the following conduct would be a violation of the statute: false representations of the character, amount or legal status of any debt; the threat to take any action that cannot legally be taken or that is not intended to be taken; or the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. 15 U.S.C. § 1692e.

In the case at bar, the parties do not dispute that Plaintiff is a "consumer" and Defendants are "debt collectors" pursuant to the FDCPA. What the parties dispute is whether the Upson County deficiency suit violates the FDCPA based on Plaintiff's argument that the statute of limitations bars the Upson County suit and is thus an "unfair debt collections practice."

In Kimber v. Federal Financial Corporation, a federal district court in Alabama considered a similar claim that a creditor's suit for a deficiency judgment violated the FDCPA because the statute of limitations had run on the debt. Kimber v. Federal Financial Corp., 668 F. Supp. 1480 (M.D. Ala. 1987). The court held that since there was no question the two possible statutes of limitation that could be applicable to the case had run, the 6-year period for simple contracts on accounts or the 3-year period for open accounts, the deficiency suit was a violation of the FDCPA as an "unfair and unconscionable means of collecting a debt." Id. at 1487. "Because few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts, such consumers would unwittingly acquiesce to such lawsuits." Id. The court therefore granted summary judgment to the debtor on her claims that the creditor filed suit on a stale debt in violation of the FDCPA.

Contrary to the facts in Kimber, in Simmons v. Miller, a federal district court in Indiana addressed a case where a debtor filed suit claiming a violation of the FDCPA and it was unclear which statute of limitations applied, either a 2-year period or 6-year period. Simmons v. Miller, 970 F. Supp. 661 (S.D. Ind. 1997). The court held that the creditor's liability hinged on whether it knowingly filed a time-barred suit against the plaintiff. Id. at 664. The court noted that the issue of which statute of limitations applied was unclear under state law and, citing a United States Supreme Court case, further noted that when the highest court of a state has not spoken on an issue the lower court rulings are not controlling. Id.

(citing Commissioner v. Bosch, 387 U.S. 456, 464-466 (1967)). The court found it was actually irrelevant which statute of limitations applied because the FDCPA prohibits intentional creditor misconduct and "for one of at least three reasons, intentional misconduct" was not present.

> First, neither the Indiana Legislature nor the Indiana Supreme Court have pronounced that the two-year statute of limitations is the law of Indiana; therefore, the suit in fact may not have been time-barred. Second, even if the two-year statute of limitations was the law in Indiana, Defendants properly could have asserted a good-faith basis to change that law. Third, even if the two-year statute of limitations applied, Defendants could have sought to amend the suit to proceed only on the underlying substantive offense without seeking treble damages. They could have likewise voluntarily dismissed the suit and refiled on the underlying insufficiently funded check only. In either event, it would still be a debt-collection suit, and it would be undisputed that it was not time-barred; thus, the FDCPA would not even be implicated. Merely filing suit to collect the debt in this case, therefore, does not raise the concerns that the FDCPA seeks to guard against.

Id. at 664 (citations omitted). Because the defendants did not knowingly file a time-barred suit, they could not have violated the FDCPA. Id. at 665. The court explained that the FDCPA was passed to prohibit the use of "strong-arm tactics, the use of profanity, the publication of debtors' names, and the continual telephoning of the debtor" regarding a debt and there was no evidence any of this type of harassing behavior had occurred. Id. at 666.

To determine whether the FDCPA has been violated in the case at bar, the Court must first determine whether Defendants knowingly and intentionally filed a time-barred suit. This analysis involves looking to Georgia law to determine if a particular statute of limitations applies to Plaintiff Almand's debt and bars the deficiency suit filed by the

6

defendants.

To purchase the vehicle in question, Plaintiff Almand procured a loan from American Investment Bank. In order for the Bank to lend Plaintiff the money for the purchase of the vehicle, the Bank required that the loan documents create a security interest on the Bank's behalf in the vehicle. Almand did not purchase the vehicle from the Bank but obtained the financing for the vehicle from the Bank thus the only transaction between Plaintiff Almand and the Bank was a loan.

Both parties acknowledge there is no controlling or even persuasive authority from Georgia's highest courts regarding which statute of limitations applies to Plaintiff's debt. It does appear however that under Georgia law the matter before this Court is a secured transaction that falls within Article 9 of Georgia's U.C.C. provisions, O.C.G.A. § 11-9-109, *et seq*. Article 9 applies to "a transaction, regardless of its form, that creates a security interest in personal property . . . by contract." Id. at (a)(1). Plaintiff Almand argues this case falls under Article 2 of the U.C.C. dealing with the sale of goods and that the 4-year statute of limitations pursuant to O.C.G.A. § 11-2-725 applies. However, Article 2 "does not apply to any transaction . . . [that] is intended to operate only as a security transaction." O.C.G.A. § 11-2-102. A review of other parts of the Georgia Code and applicable case law indicates Georgia's highest courts would hold this case falls within Article 9 and not Article 2. One of the statutes on deficiencies after repossession, O.C.G.A. 10-1-36, refers to Article 9 as the applicable statute for addressing the default of a loan on a vehicle. The portion of the

Georgia Code that instructs what must be done to obtain a title on a vehicle purchased with a loan, O.C.G.A. 40-3-1 *et seq.*, describes the transaction as a "secured transaction" that creates a "security interest" in the lender and refers to Article 9.  See O.C.G.A. § 40-3-50 (citing O.C.G.A. §§ 11-9-303, 11-9-316 and 11-9- 337).  Finally, several published cases refer to Article 9 as the statute applicable when a financed vehicle is repossessed and sold at auction and a deficiency judgment is sought.  See Motor Contract Co. of Atlanta v. Sawyer, 180 S.E.2d 282, 283-84 (Ga. App. 1971) (notice requirements to debtor pertaining to deficiency judgment remaining after sale of repossessed vehicle not covered by Motor Vehicle Sales Finance Act but by Article 9 of the U.C.C.); Corbin v. Regions Bank, 574 S.E.2d 616 (Ga. App. 2002) (addressing appropriate means of repossessing a vehicle after default on a loan) (citing O.C.G.A. § 11-9-609); In re Littleton, 220 B.R. 710 (M.D. Ga. 1998) (applying Georgia law to determine possessory interests in repossessed car) (citing O.C.G.A. § 11-9-504); Whitley v. Bank South, N.A., 366 S.E.2d 182 (Ga. App. 1988) (discussing notice to be given prior to repossession and sale) (citing O.C.G.A. § 11-9-504(3)).

Plaintiff relies All Tech Co. v. Laimer Unicon for her argument that this case falls within Article 2's "sale of goods." All Tech Co. v. Laimer Unicon, LLC, 636 S.E.2d 753 (Ga. App. 2006).  However, that case is not applicable or even instructive in the case at bar.  In All Tech, a seller of pumping equipment and components brought suit seeking payment for goods sold to the buyer and the buyer raised the 4-year "sale of goods" statute of

8

limitations defense. The court of appeals began its analysis by stating the well-known principle that, "When the predominant element of a contract is the sale of goods, the contract is viewed as a sales contract and O.C.G.A. § 11-2-725 is the applicable statute of limitation notwithstanding the potential for rendering substantial services incident to the performance of such contract." Id. at 756. The court held that "because, based on the evidence in the record, the predominant element of this agreement was the sale of goods, i.e., pumping equipment and components. . . . All Tech's complaint on account for goods it sold to Laimer was time barred under O.C.G.A. § 11-2-725 because the original complaint was filed more than four years after the invoices were submitted to Laimer." Id. (citation omitted). The court rejected the argument that the 6-year statute of limitations from O.C.G.A. § 9-3-24 applied because (1) that issue was not raised in the trial court and (2) the evidence in that case pointed to a complaint on an account and not a breach of contract for services. Id. at 757.

Plaintiff Almand also cited two unpublished opinions from Georgia trial courts regarding this issue, one of which was prepared by the plaintiff's counsel herein and merely set forth the legal conclusions that were made in the trial. In Midland v. Burney, the court without any elaboration on its applicable to that case stated that the U.C.C. "governs the sale of motor vehicles," cites O.C.G.A. § 11-2-101 and concludes that an "action for breach of contract for sale has a statute of limitations of four years," citing O.C.G.A. § 11-2-725. The court did not acknowledge the language in O.C.G.A. § 11-2-201 that *excludes* "secured

9

transactions" from that subsection, explain why that was not applicable to that case or provide any explanation regarding how the statute pertaining to the *sale* of a motor vehicle also applied to a deficiency judgment sought on a loan. See Plf.'s Resp. in Opposition to Defs.' Mot. for Summ. J, Ex. 10-3. The other order cited, Thor v. Barnett that was prepared by Plaintiff's counsel herein, was entered after the trial concluded and only stated that the plaintiff was entitled to damages for violation of the FDCPA. There is no information in that order regarding the facts or specific provisions of law relied upon for the findings made therein. These cases are not only not binding on this court but are not even persuasive authority. See O.C.G.A. § 9-12-40 (judgments are conclusive between *the same parties and their privies* as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside) (emphasis added); Chepstow Ltd. v. Hunt, 381 F.3d 1077, 1080 (11th Cir. 2004) ("Where the state's highest court has not spoken to an issue, we must adhere to the decisions of the state's *intermediate appellate courts* absent some persuasive indication that the state's highest court would decide the issue otherwise.") (emphasis added). The two orders were certainly not sufficient to put Defendants on notice that the Georgia Supreme Court or Georgia Court of Appeals would find the 4-year statute of limitations applies to their deficiency suit. Rather, it appears that Georgia's Court of Appeals and Supreme Court would view the transaction in question as a transaction that falls within Article 9 and not Article 2.

Because it appears that this case would not be a "sale of goods" under Article 2, it follows that Article 2's 4-year statute of limitations would not apply. Rather, the 6-year statute of limitations found in O.C.G.A. § 9-3-24 would most likely apply. Pursuant to O.C.G.A. § 9-3-24, "All actions upon simple contracts in writing shall be brought within six years after the same become due and payable. However, this Code section shall not apply to actions for the breach of contracts for the sale of goods under Article 2 of Title 11 or to negotiable instruments under Article 3 of Title 11." Therefore, while it appears the issue in this case does not address a "sale of goods" under Article 2 but a "secured transaction" under Article 9, it is not for this Court to speak in the first instance on what law the Georgia courts should be applying. Moreover, as in <u>Simmons v. Miller</u>, the uncertainty regarding exactly which statute of limitations applies results in a finding of no violation of the FDCPA because, if the 6-year period applies, the Upson County suit would have been filed within the statute of limitations. Accordingly, it cannot be said that Defendants in the case at bar knowingly and intentionally engaged in unfair, harassing conduct in violation of the FDCPA. Defendants' motion for summary judgment is GRANTED and this case is dismissed.

**SO ORDERED this 1st day of May, 2007.**


**S/**
**WILBUR D. OWENS, JR.**
**UNITED STATES DISTRICT JUDGE**